UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAVIER RAMIREZ, | Hon. Faith S. Hochberg, U.S.D.J. |
| Plaintiff, | Civil No. 12-4686 (FSH) (MAH) |
| v. | **OPINION & ORDER** |
| GENERAL GROWTH PROPERTIES, INC., et al., | Date: December 16, 2013 |
| Defendants. | |

**HOCHBERG, District Judge:**

This matter comes before the Court upon six motions for summary judgment by various defendants. The following motions for summary judgment are before the Court:

- Defendant J.A. Salerno Sr. & Sons, Inc.'s motion for summary judgment of no liability, or, in the alternative, summary judgment of indemnification by Defendant AMBS, Inc. (Dkt. No. 64). AMBS, Inc. opposes the motion for indemnification.

- Defendant Starbucks Corp.'s motions for summary judgment of no liability (Dkt. No. 66) and summary judgment of indemnification from Defendant ABMS, Inc. (Dkt. No. 69). ABMS, Inc. has not opposed the motion for indemnification.

- Defendant ABMS, Inc.'s motion for summary judgment of no liability (Dkt. No. 68). Plaintiff opposes this motion.

- Defendant General Growth Properties, Inc.'s motions for summary judgment of no liability (Dkt. No. 71) and summary judgment of indemnification from Defendant J.A. Salerno Sr. & Sons, Inc., ABMS, Inc., and Starbucks Corp. (Dkt. No. 67). Defendants J.A. Salerno Sr. & Sons, Inc. and Starbucks Corp. oppose the motion for indemnification.

1

With the exception of ABMS, Inc.'s motion regarding liability, Plaintiff has not opposed these motions. The Court has reviewed the submissions of the parties and considered the motion on the papers in accordance with Federal Rule of Civil Procedure 78.

## I. BACKGROUND[1]

Plaintiff Javier Ramirez ("Ramirez" or "Plaintiff") sustained an injury to his foot while performing demolition at Woodbridge Center Mall ("the Mall") inside a Starbucks Corp. location. (Pl.'s Compl., ¶¶ 9, 19.) Plaintiff alleges that Defendants General Growth Properties, Inc. ("GGP"), Starbucks Corp. ("Starbucks"), J.A. Salerno Sr. & Sons, Inc. ("Salerno"), MLN Contractors, Inc. ("MLN"), and ABMS Inc. ("ABMS") were negligent, thereby causing his injuries. (Pl.'s Compl., ¶¶ 21-22.)

Starbucks rents its space from GGP, the Mall owner. On March 15, 2011, Starbucks entered into a general construction contract with Salerno. Salerno was to serve as the general contractor for Starbucks. In turn, Salerno entered into a subcontract with ABMS for work at the Starbucks location in the Mall. Plaintiff alleges that he was working for ABMS when he was injured.

On March 10, 2012, Plaintiff was injured while demolishing the ceiling in the Starbucks located in the Mall. Specifically, Plaintiff alleges that while demolishing the ceiling, a portion of the ceiling fell, knocked him off of a lift, causing him to fall to the ground and become injured.

## II. STANDARD OR REVIEW

Pursuant to Federal Rule of Civil Procedure 56(c), a motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and

---

[1] Unless otherwise noted, these facts come from the parties' statements of undisputed facts. PR refers to Plaintiff's response to Defendant's statement of undisputed facts and PS refers to Plaintiff's statement of undisputed facts.

that the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In other words, "[s]ummary judgment may be granted only if there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party." *Miller v. Indiana Hosp.*, 843 F.2d 139, 143 (3d Cir. 1988). All facts and inferences must be construed in the light most favorable to the non-moving party. *Peters v. Delaware River Port Auth.*, 16 F.3d 1346, 1349 (3d Cir. 1994). The judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. "Consequently, the court must ask whether, on the summary judgment record, reasonable jurors could find facts that demonstrated, by a preponderance of the evidence, that the nonmoving party is entitled to a verdict." *In re Paoli R.R. Yard PCB Litigation*, 916 F.2d 829, 860 (3d Cir. 1990).

The party seeking summary judgment always bears the initial burden of production. *Celotex Corp.*, 477 U.S. at 323. This burden requires the moving party to establish either that there is no genuine issue of material fact and that the moving party must prevail as a matter of law, or to demonstrate that the nonmoving party has not shown the requisite facts relating to an essential element of an issue on which it bears the burden. *Id*. at 322-23. Once the party seeking summary judgment has carried this initial burden, the burden shifts to the nonmoving party.

To avoid summary judgment, the nonmoving party must then demonstrate facts supporting each element for which it bears the burden, and it must establish the existence of a "genuine issue of material fact" justifying trial. *Miller*, 843 F.2d at 143; *accord Celotex Corp.*, 477 U.S. at 324. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

U.S. 574, 586 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id*. at 587 (quoting *First National Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). Further, summary judgment may be granted if the nonmoving party's "evidence is merely colorable or is not significantly probative." *Anderson*, 477 U.S. at 249-50.

## III. DISCUSSION

### A. Liability

Plaintiff's claims rest of allegations of negligence. Under New Jersey law, a plaintiff must show four elements to establishing negligence: (1) a duty of care; (2) a breach of that duty; (3) proximate cause; and (4) actual damages. *Weinberg v. Dinger*, 106 N.J. 469, 484 (1987) ("A cause of action founded upon negligence involves a breach of a duty of care that causes injury.").

<u>Starbucks, Salerno, and GGP</u>

Under New Jersey law, "an owner of a building has a nondelegable duty to exercise reasonable care for the safety of tenants and persons using the premises at his invitation." *De Los Santos v. Saddlehill, Inc.*, 211 N.J. Super. 253, 261 (App. Div. 1986). "The owner of land who invites workmen of an independent contractor to come upon his premises is under a duty to exercise ordinary care to render reasonably safe the areas in which he might reasonably expect them to be working." *Sanna v. Nat'l Sponge Co.*, 209 N.J. Super. 60, 66 (N.J. Super. Ct. App. Div. 1986). This includes the duty to make a reasonable inspection to discover defective and hazardous conditions. *Id*. The landowner must either make the condition of the premises reasonably safe or give an adequate warning. *Id*. at 66-67.

Nonetheless, "[i]t has long been the rule in New Jersey and elsewhere that one who hires an independent contractor is not responsible for the latter's negligent acts." *Cassano v. Aschoff*,

4

226 N.J. Super. 110, 113 (N.J. Super. Ct. App. Div. 1988) (citing *Majestic Realty Associates, Inc. v. Toti Contracting Co.*, 30 N.J. 425, 431, 153 A.2d 321, 324 (1959)). In other words:

> The duty to provide a reasonably safe place in which to work is relative to the nature of the invited endeavor and does not entail the elimination of potential operational hazards which are obvious and visible to the invitee upon ordinary observation. This is especially so when the invitee is an experienced laborer hired either to correct the very danger present or to perform his tasks amidst the visible hazards. The landowner may assume that the worker, or his superiors, are possessed of sufficient skill to recognize the degree of danger involved and to adjust their methods of work accordingly. Thus the unimpaired line of holdings to the effect that ***the duty to provide a reasonably safe working place for employees of an independent contractor does not relate to known hazards which are part of or incidental to the very work the contractor was hired to perform***.

*Wolczak v. Nat'l Elec. Products Corp.*, 66 N.J. Super. 64, 75 (N.J. Super. Ct. App. Div. 1961) (emphasis added, internal citations omitted). Indeed, "[t]he landowner is under no duty to protect an employee of an independent contractor from the very hazard created by doing the contract work." *Sanna*, 209 N.J. Super. at 67. "Exceptions to the rule are recognized where one retains control over the manner and means by which the work is to be performed, where the work constitutes a nuisance per se or where one knowingly engages an incompetent contractor." *Cassano*, 226 N.J. Super. at 113.

It is undisputed that Starbucks hired Salerno to undertake construction work on their stores. It is also undisputed that Salerno subcontracted its demolition work to ABMS. Moreover, it is undisputed that Plaintiff did not work for Starbucks, Salerno, or GGP, they did not provide the equipment he used, and did not oversee the demolition work. Under these circumstances, Starbucks, Salerno, and GGP never breached any duty to Plaintiff. *See*, *e.g.*, *McEwen v. United States*, Civ. No. 03-167, 2006 WL 1074442, *4-*5 (D.N.J. Apr. 25, 2006) *aff'd*, 243 F. App'x 685 (3d Cir. 2007).

In addition, Plaintiff has pointed to no facts that show negligence on the part of Starbucks, Salerno, or GGP. In such a case, summary judgment of no liability is appropriate. *Callahan v. Nat'l Lead Co., Titanium Div.*, 4 N.J. 150, 153 (1950) ("It is fundamental that negligence must be proved; it will not be presumed, and the mere occurrence of an accident causing injuries is not alone sufficient to authorize an inference of negligence."). Summary judgment of no liability with respect to these defendants is granted.

ABMS

ABMS makes three arguments in support of its motion for summary judgment of no liability: (1) Plaintiff failed to introduce expert evidence with respect to liability, thereby precluding a finding of liability; (2) the fines assessed against ABMS by OSHA are not enough, standing alone, to find liability against ABMS; and (3) Plaintiff caused his own harm and has failed to show negligence by ABMS. The Court addresses these arguments in turn below.

First, ABMS argues that because Plaintiff did not provide expert testimony in this matter, it is entitled to summary judgment of no liability. Under New Jersey law, "except for malpractice cases, there is no general rule or policy *requiring* expert testimony as to the standard of care." *Butler v. Acme Markets, Inc.*, 89 N.J. 270, 283 (1982) (emphasis in original). "The test of need of expert testimony is whether the matter to be dealt with is so esoteric that jurors of common judgment and experience cannot form a valid judgment as to whether the conduct of the party was reasonable." *Id*. There is nothing about this case that requires the evaluation of an expert to determine the standard of care or liability. It does not involve complex facts or esoteric subject matter. Rather, it involves injuries sustained while demolishing a ceiling. The evaluation of these circumstances, and ABMS's role, is well within the bailiwick of common judgment and experience. ABMS is not entitled to summary judgment on this ground.

Second, ABMS argues that the OSHA fines assessed against ABMS are not enough for a finding of liability. The New Jersey Supreme Court addressed this issue in *Alloway v. Bradlees, Inc.*, 157 N.J. 221 (1999):

> We find the reasoning of those decisions to be sound, and determine that the violation of OSHA regulations without more does not constitute the basis for an independent or direct tort remedy. Accordingly, we agree with the court in *Kane*, *supra*, that "the finding of an OSHA violation does not *ipso facto* constitute a basis for assigning negligence as a matter of law; that is, it does not constitute negligence *per se*." 278 N.J.Super. at 144, 650 A.2d 808. Nevertheless, OSHA regulations are pertinent in determining the nature and extent of any duty of care. We find applicable in the circumstances of this case the well-established principle that the violation of a legislated standard of conduct may be regarded as evidence of negligence if the plaintiff was a member of the class for whose benefit the standard was established.

*Alloway*, 157 N.J. at 236. In short, OSHA regulations alone are not enough to support a direct tort, but they are relevant to determining the nature and extent of a duty of care.

Finally, ABMS argues that Plaintiff caused his own harm and has not shown negligence by ABMS. "A major consideration in the determination of the existence of a duty of reasonable care under general negligence principles is the foreseeability of the risk of injury." *Id*. at 230 (internal citations and quotation marks omitted). The determination of such a duty "involves identifying, weighing, and balancing several factors—the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution." *Hopkins v. Fox & Lazo Realtors*, 132 N.J. 426, 439 (1993).

In contrast to the other defendants in this action, there are genuine disputes as to material facts with respect to the both the relationship between Plaintiff and ABMS as well as the amount of control ABMS exerted over Plaintiff's actions. For example, Plaintiff asserts that ABMS hired him to conduct demolition, instructed him to conduct the demolition, and provided him with materials and equipment—including the lift Plaintiff fell from. (PR ¶¶ 4-5; PS ¶¶ 4-7.)

7

Indeed, ABMS concedes that accident was foreseeable. (Dkt. No. 68 at 8.) A party can be liable under such circumstances even where the plaintiff is a subcontractor. *Alloway*, 157 N.J. at 233 (finding that a general contractor had a duty to a subcontractor's employee based on the foreseeability of harm, the relationship between the parties, and the opportunity and capacity to take corrective action); *see also Majestic*, 30 N.J. at 431 (noting a party can be liable for a contractor's negligence when it retains control over the manner and means of doing the work); *Carvalho v. Toll Bros. & Developers*, 143 N.J. 565, 578 (1996).

In addition, whether or not ABMS breached a duty of care and was a cause-in-fact of Plaintiff's injuries is a question of fact for the jury.[2] (*See*, *e.g.*, PS ¶¶ 6-7, 13-15.) On summary judgment, all facts and inferences must be construed in the light most favorable to the non-moving party. *Peters*, 16 F.3d at 1349. ABMS's motion for summary judgment of no liability must be denied.

**B. Indemnification**

Salerno sought summary judgment of indemnification as an alternative to summary judgment of no liability. (Dkt. No. 64.) In light of the Court's grant of summary judgment of no liability with respect to Salerno, its motion for summary judgment of indemnification is denied as moot.

Starbucks seeks summary judgment of indemnification from ABMS based on its contract with Salerno and Salerno's contract with ABMS. (Dkt. No. 69.) ABMS does not oppose Starbucks' motion. The subcontractor agreement between Salerno and ABMS states:

> To the fullest extent permitted by law, Subcontractor will indemnify and hold harmless [Salerno] and Owner . . . from and against any and all

---

[2] New Jersey Courts have also found that "[f]acts that demonstrate an OSHA violation constitute evidence of negligence that is sufficient to overcome a motion for summary judgment." *Alloway*, 157 N.J. at 240-41. The fact that Plaintiff alleges that ABMS had OSHA violations related to the disputed accident further precludes summary judgment in ABMS's favor.

> claims, suits, liens judgments, damages, losses and expenses, including legal fees and all court costs and liability . . . arising in whole or in part and in any manner from injury and/or death of person or damage to or loss of any property resulting from the acts, omissions, breach or default of Subcontractor, its officers, directors, agents, employees or subcontractors, in connection with performance of any work by or for Subcontractor pursuant to any contract Purchase Order and/or related Proceed Order, except these claims, suits, liens, judgments, damages, losses and expenses caused by the negligence of [Salerno]. Subcontractor will defend and bear all costs of defending any actions or proceedings brought against [Salerno] and/or Owner . . . arising in whole or in part out of any such acts, omission, breach or default. The foregoing indemnity shall include injury or death of any employee of the Contractor or Subcontractor and shall not be limited in any by an amount or type of damage, compensation, or benefits payable under any applicable workers compensation, disability benefits or other similar employees benefit acts.

(Dkt. No. 69-4.) The "owner" referred to in this contract is Starbucks, which is made clear by the construction contract between Salerno and Starbucks. (Dkt. No. 69-3 at 6 ("THIS GENERAL CONSTRUCTION CONTRACT (the 'Agreement') is made between STARBUCKS CORPORATION (hereinafter 'Owner') and J.A. SALERNO, SR. & SONS, INC. . . . .").) The construction contract between Starbuck and Salerno also contains an indemnification clause:

> To the fullest extent permitted by law, contractor [Salerno] shall indemnify, defend (at owner's option) and hold harmless owner and owner's affiliated companies . . . (collectively 'indemnities') from and against any claims, demands, causes of action, penalties, attachments, judgments, losses, damages, costs and expenses (including, without limitation, defense, settlement and attorneys' fees), and liabilities (including, without limitation, claims and liabilities relating to bodily injury or property damage) . . . directly or indirectly arising out of, resulting from or related to this agreement or the work, including, without limitation, any failure by contractor to properly perform the work in accordance with the contract documents, or negligence or misconduct of contractor or contractor's officers . . . or sub-contractors. If such claims or liabilities are caused in part by the negligence of any indemnity, contractor shall remain liable for its proportionate share.

(Dkt. No. 69-3 at Article 9.1.)

GGP seeks summary judgment of indemnification from Starbucks, Salerno, and ABMS based on the lease to Starbucks, the contract between Starbucks and Salerno, and the contract between Salerno and ABMS. (Dkt. No. 67 at 6.) The lease between GGP and Starbucks states:

> Excluding the negligence or willful misconduct of the indemnitee, Tenant shall indemnify, defend and save harmless Landlord, its parents, subsidiaries, and affiliates, their agents, officers and employees from and against liability, claims, demands, expenses, fees, fines, penalties, suits, proceedings, actions, and causes of action arising out of or connected with Tenant's use, occupancy, management or control of the Leased Premises or Tenant's operations or activities in the Shopping Center (whether or not occurring or resulting in damage or injury within the Lease Premises or the Joint Use Areas). This obligation to indemnify shall include reasonable legal and investigation costs and all other reasonable costs, expense and liabilities from the 1st notice that any claim or demand is or may be made. Tenant's obligation shall become effective beginning on the date Tenant is delivered the Leased Premises. Tenant's indemnification obligation shall survive the expiration of the Term or the earlier Termination of the Lease.

(Dkt. No. 67-15 at Article 20 (Ex. J).)

Under New Jersey law, "[i]ndemnity contracts are interpreted in accordance with the rules governing the construction of contracts generally." *Ramos v. Browning Ferris Indus. of S. Jersey, Inc.*, 103 N.J. 177, 191 (1986). "When the meaning of the clause is ambiguous, however, the clause should be strictly construed against the indemnitee." *Id*. "[A]n indemnity provision is to be construed in accordance with the rules for the construction of contracts generally, and hence that the judicial task is to ascertain the intention of the parties from the language used, the surrounding circumstances and the objects sought to be attained by the parties under their agreement." *Mautz v. J.P. Patti Co.*, 298 N.J. Super. 13, 19 (App. Div. 1997).

"[A] contract will not be construed to indemnify the indemnitee against losses resulting from its own negligence unless such an intention is expressed in unequivocal terms." *Id*. Indeed, under N.J.S.A. 2A:40A-1, "an indemnitee cannot be indemnified for its own negligence

if it is the only negligent party." *Id.* at 20; *see also Azurak v. Corporate Prop. Investors*, 175 N.J. 110, 111-12 (2003); *Mantilla v. NC Mall Associates*, 167 N.J. 262, 273 (2001).[3]

Starbucks

ABMS does not oppose Starbuck's motion for summary judgment of indemnification based on ABMS's contract with Salerno. The indemnification agreement requires that the losses "aris[e] in whole or in part and in any manner from injury and/or death of person or damage to or loss of any property resulting from the acts, omissions, breach or default of Subcontractor, its officers, directors, agents, employees or subcontractors." (Dkt. No. 69-4.) As noted above, there is an unresolved issue of fact as to whether or not Plaintiff was an employee or subcontractor of ABMS. (PR ¶¶ 4-5.) If the jury determines that Plaintiff was an employee or subcontractor of ABMS, Starbucks would be entitled to indemnification from ABMS, but this is an outstanding issue of fact and summary judgment must be denied.

GGP

GGP also claims that the contract between ABMS and Salerno and the contract between Salerno and Starbucks entitles them to indemnification from Salerno or ABMS. (Dkt. No. 67 at 6.) Essentially, GGP argues that because it owns the Mall, the reference to "Owner" in the ABMS and Salerno contracts applies to GGP. (Dkt. No. 67 at 9.) GGP is incorrect. Based on the contract between Salerno and Starbucks as well as the contract between Salerno and ABMS, it is clear that the "Owner" referred to in the ABMS subcontract is Starbucks. (*See supra* at 9.) GGP was not a party to these agreements and they were not intended to cover GGP as a third-party. GGP is not entitled to indemnification based on the ABMS subcontract.

---

[3] As noted above, all of the parties seeking indemnification (Starbucks, GGP, and Salerno) are entitled to summary judgment of no liability. Therefore, this rule need not be addressed here.

11

GGP also claims that the lease between Starbucks and GGP entitles them to indemnification from Starbucks. Under the terms of the lease, GGP is entitled to indemnification "against liability, claims, demands, expenses, fees, fines, penalties, suits, proceedings, actions, and causes of action arising out of or connected with Tenant's use, occupancy, management or control of the Leased Premises or Tenant's operations or activities in the Shopping Center." (Dkt. No. 67-15 (Ex. J).) GGP failed to provide any argument or analysis as to how Plaintiff's claims "aris[e] out of or connect[] with Tenant's use, occupancy, management or control of the Leased Premises or Tenant's operations or activities in the Shopping Center."[4] Without this nexus, GGP is not entitled to summary judgment with respect to indemnification. At a minimum, there is an outstanding issue of fact as to whether Starbucks' activities fall within the provisions of the lease. Summary judgment must be denied.

## IV. CONCLUSION & ORDER

For the reasons stated above,

**IT IS** on this 16th day of December, 2013,

**ORDERED** that Salerno's motion for summary judgment (Dkt. No. 64) is **GRANTED** with respect to no liability and **DENIED** as **MOOT** with respect to indemnification; and it is further

**ORDERED** that Starbucks' motion for summary judgment of no liability (Dkt. No. 66) is **GRANTED**; and it is further

---

[4] GGP's whole analysis is a single sentence: "The alleged incident obviously arose from and was connect with Defendant, Starbucks, 'use, occupancy, management or control of the Leased Premises or Tenant's operations or activities in the Shopping Center,' and therefore Defendant, General Growth seeks an Order granting it defense and indemnification by and through Defendant, Starbucks." (Dkt. No. 67 at 13.) Merely stating that something is obvious is not enough to meet the standard for summary judgment.

**ORDERED** that GGP's motion for summary judgment of no liability (Dkt. No. 71) is **GRANTED**; and it is further

**ORDERED** that ABMS's motion for summary judgment of no liability (Dkt. No. 68) is **DENIED**; and it is further

**ORDERED** that Starbucks' motion for summary judgment of indemnification from ABMS (Dkt. No. 69) is **DENIED**; and it is further

**ORDERED** that GGP's motion for summary judgment of indemnification (Dkt. No. 67) is **DENIED**; and it is further

**ORDERED** that the parties participate in arbitration.

**/s/ Faith S. Hochberg_____**
**Hon. Faith S. Hochberg, U.S.D.J.**